**ROSS PRODUCTS, INC., Plaintiff,**

v.

**NEW YORK MERCHANDISE CO., Inc., Defendant.**

United States District Court
S. D. New York.
May 18, 1964.

Sharretts, Paley & Carter, New York City, Harry N. Borsher, New York City, of counsel, for plaintiff.

Kirschstein, Kirschstein & Ottinger, New York City, George Gottlieb, New York City, of counsel, for defendant.

TENNEY, District Judge.

Plaintiff has moved for a preliminary injunction to restrain the defendant from infringing on an alleged copyright. Defendant has cross-moved to

dissolve the temporary restraining order now in effect.

"The granting of a preliminary injunction 'is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.' * * * 'It is a cardinal principle of equity jurisprudence that a preliminary injunction shall not issue in a doubtful case. Unless the court be convinced with reasonable certainty that the complainant must succeed at final hearing the writ should be denied.'" Nadya, Inc. v. Majestic Metal Specialties, Inc., 127 F.Supp. 467 (S.D.N.Y.1954).

Irrespective of which standard is used:

(a) Do the affidavits raise a question as to the validity of the copyright? American Visuals Corp. v. Holland, 219 F.2d 223 (2d Cir. 1955); Kramer Jewelry Creations, Inc. v. Capri Jewelry, 143 F.Supp. 120 (S.D.N.Y.1956);

(b) Has plaintiff made a prima facie showing of the validity of his copyright? Scarves By Vera, Inc. v. United Merchants, & Mfrs., Inc., 173 F.Supp. 625 (S.D.N.Y.1959);

(c) Is there a likelihood of plaintiff's ultimate success? American Visuals Corp. v. Holland, 261 F.2d 652 (2d Cir. 1958); Huber Baking Co. v. Stroehmann Bros. Co., 114 F.Supp. 411 (S.D.N.Y.), aff'd, 208 F.2d 464 (2d Cir. 1953)— plaintiff's motion must be denied and therefore defendant's motion to dissolve the temporary restraining order is granted.

■■ The defendant has attacked the validity of plaintiff's copyright on two grounds:

(1) A publication in Japan without proper copyright notice, putting the work in the public domain. It is well established that once a work has been put in the public domain there can be no valid copyright subsequent to that publication. See Continental Casualty Co. v. Beardsley, 253 F.2d 702 (2d Cir.), cert. denied, 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58 (1958).

(2) An omission in the copyright registration which, if found to be wilful, could under certain circumstances vitiate the entire copyright.

The figure in question is an inflated baseball catcher. There seems to be no dispute between the parties that plaintiff's and defendant's figures are almost identical. Defendant contends, however, that its figure, produced in Taiwan, was copied from a figure put on sale and displayed in both a Toy Fair and in a department store in Japan without any copyright notice on it.

For the purposes of this motion, the Court has accepted plaintiff's contention that its employee, Oscar Schwartz, was the originator and therefore the proprietor of the figure. The correspondence between Mr. Schwartz and plaintiff's agent in Japan shows, at least in a prima facie manner, that the idea originated with Schwartz and that the figure took its present form as a result of his instructions, recommendations and corrections.

On the basis of the affidavits submitted herein, there seems to be no question but that the figure was put on display at a Toy Fair in October 1963 and on sale in various department stores in Japan in November 1963. Exhibit A of plaintiff's affidavit contains a letter dated September 14, 1963, from plaintiff's agent in Japan. It states: "Therefore Kinder Service [manufacturers of the figure] and ourselves decided to put on the production of 1,000 dozen for domestic sell * * *. Anyhow we will discuss the matter further upon Mr. Schwartz's arrival." The plaintiff has not claimed, nor, in view of the foregoing statement, can it claim, that the publication was unauthorized. Presumably, Mr. Schwartz saw the figures to be displayed and discussed their being displayed with their agent in Japan.

■ Defendant's affidavits assert that its representatives saw the figure on display at the Toy Fair and on sale in a department store. It cannot be disputed that putting the article on sale to the general public constituted a general publication. See White v. Kimmell, 193 F.2d

744 (9th Cir.), cert. denied, 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357 (1952).

Defendant brought before the Court an exhibit which it contends is an exact replica of the figure that its representatives saw in Japan both at the Toy Fair and in the department store. While plaintiff attacked this assertion, it did not produce any proof either by exhibit or affidavit controverting this fact.

An examination of the figure reveals no markings whatsoever on the figure itself.

There is a red tag around the figure's neck, written in Japanese, a translation of which uses the word "copyright" followed by a number. While under 17 U.S.C. § 19 (Supp.1963) the word copyright is sufficient notice, the name of the proprietor or his trademark, neither of which is present here or on any other part of the figure, must be indicated. In addition, assuming that this information was supplied, there is considerable doubt as to the efficacy of a notice affixed to a hangtag, which can easily be removed. 37 C.F.R. § 202.2(b) (9) (1959); Peter Pan Fabrics v. Dixon Textile Corp., 188 F.Supp. 235 (S.D.N.Y.1960); Scarves By Vera, Inc. v. United Merchants & Mfrs., Inc., 173 F.Supp. 625 (S.D.N.Y.1959); Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kalso Co., 144 F.Supp. 577 (S.D.N.Y.1956).

Moreover, the word "copyright" appearing on the tag referred *not* to a copyright but rather to the *patent* covering the *material* of which the figure was made, followed by the patent registration number. This "indication" of patent followed by the patent registration number is required by the Japanese law. The Patent Law [of Japan] and The Enforcement Law Thereof, art. 187 (1960); Patent Law Enforcement Order and Patent Law Enforcement Regulations [of Japan], art. 68 (1960).

In view of these defects, the Court need not rule on the efficacy of a notice which, as here, is in a foreign language, 37 C.F.R. § 202.2(b) (4) (1959); Nimmer, Copyright, § 88.1 (1963), and a notice which may be illegible and too small for a reading by the naked eye. Deward & Rich, Inc. v. Bristol Savings & Loan Corp., 120 F.2d 537 (4th Cir. 1941).

On the box in which the figure is packed, there appears the trademark and the name of the manufacturer without any notice of copyright. (The name appearing is that of Kinder Service, the manufacturer and not of plaintiff, Ross Products.) Even if there had been such a notice of copyright on the box, the copyright regulations condemn it and specifically state that it is defective. 37 C.F.R. § 202.2(b) (10) (1959).

Both Japan and the United States are signatories of the Universal Copyright Convention and, under that treaty, if the formalities of notice required by the treaty are complied with, the copyright has protection in all contracting states even if the state in which the protection is sought has different requirements. Universal Copyright Convention, Article III(1) (1952). Text of the Convention appears in 17 U.S.C. § 9 (Supp.1963).

In order for a work to be so protected it must contain the prescribed formalities of a "c" enclosed in a circle, together with the date and the name of the proprietor. Conforming to the notice requirements of the Convention obviates the necessity of conforming to the laws of the respective contracting states. Article III(1), supra.

The notice in the present case does not conform to either the copyright law of the United States or the Universal Copyright Convention.

We are thus faced with the case of an American proprietor who has published abroad without adequate copyright notice. The issue is a simple one—does this prior publication abroad place the work in the public domain, preventing the later acquisition of a valid copyright?

The regulations of the Copyright Office specifically state that: " * * * (3) Works first published abroad * * * must bear an adequate copyright notice at the time of their first publication in order to secure copyright under the law

of the United States." 37 C.F.R. § 202.-2(a) (3) (1959).

In Basevi v. Edward O'Toole Co., 26 F.Supp. 41, 45 (S.D.N.Y.1941), the Court held that if a "foreign complier—plans to take out a United States copyright which will be valid, * * * he must have maintained intact under *our law* his common law copyright therein, and then he must take such steps as our Copyright Act requires." (Emphasis added.) In view of that fact "it is required, [in order] to secure a copyright here, that *any publication in a foreign country must contain a notice of United States copyright.*" ibid. (Emphasis added.) Accord, The Mikado Case, 25 Fed. 183 (S.D. N.Y.1885); see American Code Co., Inc. v. Bensinger, 282 Fed. 829, 833 (2d Cir. 1922); Universal Film Mfg. Co. v. Copperman, 212 Fed. 301 (S.D.N.Y.), aff'd, 218 Fed. 577 (2d Cir.), cert. denied, 235 U.S. 704, 35 S.Ct. 209, 59 L.Ed. 433 (1914); O'Neill v. General Film Co., 171 App.Div. 854, 157 N.Y.Supp. 1028 (1st Dep't 1916).

This position has found support in the above-quoted regulation of the Copyright Office.

Heim v. Universal Pictures, Inc., 154 F.2d 480 (2d Cir. 1946), decided *prior* to this regulation, modified somewhat the Basevi doctrine. In *dicta*, Judge Frank stated in the Heim case that:

"We construe the statute, as to a publication in a foreign country *by a foreign author* * * * not to require, as a condition of obtaining or maintaining a valid American copyright, that any notice be affixed to any copies whatever published in such foreign country, regardless of whether publication first occurred in that country or here, or whether it occurred before or after registration here. * *

"[P]ublication abroad will be in all cases enough, provided that, under the laws of the country where it takes place, it does not result in putting the work into the public domain." id. at 486, 487. (Emphasis added.) Accord, Italian Book Co. v. Cardilli, 273 Fed. 619 (S.D.N.Y. 1918).

Taken together, and disregarding for the moment a specific regulation covering this situation, the Basevi case as modified by the Heim case, at most stands for the proposition that "publication abroad without notice of United States copyright will not preclude the owner from subsequently obtaining a valid United States copyright if the United States has a treaty extending copyright protection *to citizens of the foreign country involved,* in accordance with 17 U.S.C. § 9(b) (Supp.1963)—[§ 9 deals with the ability of an *alien* author to secure copyright protection in the United States]—and if under the laws of that country the publication there did not result in putting the work in the public domain." Rolland v. Henry Holt & Co., 152 F.Supp. 167, 168 n. 1 (S.D.N.Y.1957). (Emphasis added.); Mills Music, Inc. v. Cromwell Music, Inc., 126 F.Supp. 54, 75–76 (S.D. N.Y.1954).

Thus even if the Court was disposed, in a proper case, to modify the specific prohibition of the regulation and the case law and follow the Heim doctrine, this is not such a case. For here we are not dealing with an alien author covered by Heim but rather a domestic proprietor governed by United States copyright law whose protection he seeks and/or the protection of the Universal Copyright Convention, under both of which statutes his notice was not only inadequate but non-existent. In view of that fact, 37 C.F.R. § 202.2(a) (3) (1959) is clearly controlling.

The final problem raised by the affidavits is that of knowledge by the infringer.

On the basis of statements made in defendant's affidavits, the Court concludes that its representatives at least knew that the manufacturer had applied for a copyright in Japan. However, the defendant did not see any figure with a copyright notice, nor have any knowledge of plaintiff's alleged copyright until the latter part of January 1964.

 While the law may be different with respect to knowledge, in the case of unsubstantial variation from the requi-

site form of copyright, Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kalso Co., 144 F.Supp. 577 (S.D.N.Y.1956), it is clear that where there is a substantial variation in the form of such notice, and surely where there is *no* notice whatsoever, the fact that the defendant knew that there was a copyright will not prevent the item from falling into the public domain. Thompson v. Hubbard, 131 U.S. 123, 9 S.Ct. 710, 33 L.Ed. 76 (1889); Nimmer, Copyright § 86.1 n. 77, § 90.4 n. 275 (1963); see Klasmer v. Baltimore Football, Inc., 200 F.Supp. 255 (D.Md. 1961); Metro Assoc. Services, Inc. v. Webster City Graphic, Inc., 117 F.Supp. 224 (N.D.Iowa 1953).

Plaintiff has not sought to bring himself within the purview of 17 U.S.C. § 21 (1952), justifying a lack of notice in certain specified cases, nor has he alleged that only a few of the items published were published without notice. Kramer Jewelry Creations, Inc. v. Capri Jewelry, 143 F.Supp. 120 (S.D.N.Y.1956); B & B Auto Supply, Inc. v. Plesser, 205 F. Supp. 36 (S.D.N.Y.1962).

Finally, there was certain relevant information not supplied in the copyright registration form. Plaintiff did not fill in any answer to the question regarding possible publication abroad, an answer which might have caused the Copyright Office to reject his application.

The question of intent cannot be decided on the basis of affidavits, but surely this unexplained omission of a material fact (publication abroad) casts doubt on the validity of the registration itself and raises the possibility of fraud and intent to deceive and misrepresent. See Advisers, Inc. v. Wiesen-Hart, Inc., 238 F.2d 706 (6th Cir. 1956), cert. denied, 353 U.S. 949, 77 S.Ct. 861, 1 L.Ed.2d 858 (1957); Wrench v. Universal Pictures Co., 104 F.Supp. 374, 379 (S.D.N.Y. 1952).

Plaintiff's motion for a preliminary injunction is denied. Defendant's motion to dissolve the temporary restraining order is granted.

So ordered.